## Sportsmen's Boating Corporation *v.*
## Edward Hensley et al.
## (11074)

Speziale, C. J., Peters, Healey, Parskey and Grillo, Js.

Argued November 30, 1983—decision released April 17, 1984

*Robert I. Reardon, Jr.,* with whom, on the brief, was *Michael D. Shapiro,* for the appellant (plaintiff).

*Enid A. Scott,* with whom, on the brief, was *Griswold Morgan,* for the appellees (defendants).

SPEZIALE, C. J. The plaintiff, Sportsmen's Boating Corporation, sued the defendants, Helen W. Hensley, individually and as administratrix of the estate of Edward E. Hensley, in three counts, alleging in the first count tortious interference with the plaintiff's business by the making of false and defamatory statements, in the second count tortious interference by unfair competition, and in the third count violations of the Connecticut Unfair Trade Practices Act, General Statutes §§ 42-110a through 42-110q. The plaintiff has appealed from the trial court's judgment for the defendants on all counts. We find no error.

For the past thirty years the plaintiff has operated a successful sport fishing business from its dock in Waterford, on the Niantic River. The plaintiff owns and operates a party fishing boat, the Mijoy I (hereinafter the Mijoy), which is open to the public. Customers pay an admission fee and fish the waters of Long Island Sound. Throughout the time pertinent to this suit the Mijoy sailed twice daily from April through November of each year, weather permitting. It departed at 6 a.m. and 1 p.m.

The plaintiff's dock is located at the southern end of River Street, a narrow road that parallels the Niantic River. The primary access road for customers approaching the Mijoy dock is Route 156, which carries traffic east-west and intersects with River Street at River Street's northerly terminus.

The defendants also own and operate a party fishing boat, the Blackhawk. Like the Mijoy, the Blackhawk invites paying customers from the general public. The Blackhawk also operates from April through November, departing twice daily at the same times as the Mijoy. The defendants' dock is also located on the Niantic River, off River Street. The parking area and ticket booth for the Blackhawk are adjacent to River Street

and lie between Route 156 and the plaintiff's dock. Thus, potential customers of either boat reach the Blackhawk dock before the Mijoy dock. Those who wish to board the Mijoy must pass the Blackhawk ticket booth and parking lot and continue approximately 350 feet south to reach the Mijoy parking lot.

Because each boat's first excursion departed at 6 a.m., at certain times of the year it was still dark when customers began arriving. The plaintiff alleged that each morning, as potential customers approached the dockage areas by car on River Street, the defendants' employees stood in the street and waved flashlights at the approaching vehicles directing them into the Blackhawk parking lot. The plaintiff also alleged that said employees, when questioned by approaching customers about access to the Mijoy dock, stated variously that the Mijoy was full, that the Mijoy was not sailing, or that the Mijoy had not been catching as many fish as the Blackhawk. The plaintiff further alleged that the defendants' ticket booth was not identified as being associated with the Blackhawk, thereby deluding customers who believed that they were boarding the Mijoy.

The case was tried to the court, which after hearing the evidence rendered judgment for the defendants on all three counts. The trial court concluded that the plaintiff failed to prove that the defendants had engaged in any unlawful or unfair competitive practices and it found the issues for the defendants. On appeal the plaintiff claims error in certain factual conclusions made by the trial court and in the trial court's failure to consider separately the second and third counts of the complaint.[1] We find no error.

---

[1] The plaintiff raises three additional claims of error, none of which merits extensive discussion. First, the plaintiff asserts that the trial court erred in failing to address its claim that customers were prevented from reach-

The plaintiff argues that the trial court erred in two of its factual conclusions: (a) that the only direct evidence of the defendants' false statements about the plaintiff's business came from a hostile ex-employee of the defendants, and (b) that no witness was excessively deterred or misled from proceeding to the plaintiff's dock.

The factual finding of a trial court on any issue is reversible only if it is clearly erroneous. Practice Book § 3060D. "The factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties . . . ." *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Footnote omitted.) *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); see *D'Occhio* v. *Connecticut Real Estate Commission,*

---

ing the Mijoy because the Blackhawk ticket booth was not marked as such. A review of the record indicates that the trial court sufficiently stated its finding on that claim.

Second, the plaintiff claims error in the trial court's failure to address, in its memorandum of decision, any evidence of harassment or intimidation beyond the specific methods set out in the complaint. The memorandum of decision makes clear that it considered all the evidence presented and found that none of the alleged unfair or deceptive practices had been proved sufficiently to impose liability.

Third, the plaintiff claims that the trial court improperly required a showing that alleged false and defamatory statements were made *consistently,* in order to impose liability. The trial court made a factual finding, however, that the plaintiff had not sustained its burden of proving that the defendants had made *any* false and defamatory statements. Therefore, we need not decide whether the standard for liability that the trial court would have applied was correct.

189 Conn. 162, 179, 455 A.2d 833 (1983); *Kaplan* v. *Kaplan,* supra; *Lukas* v. *New Haven,* 184 Conn. 205, 208, 439 A.2d 949 (1981).

Here, the plaintiff claims that the trial court misinterpreted the evidence presented in making the challenged factual findings. In reviewing challenges to factual findings an appellate court must be particularly mindful of its role in the adjudicative process. The reviewing court must guard against substituting its interpretation of the evidence as reflected by the cold, printed record for an equally tenable interpretation made by the trial court. *Kaplan* v. *Kaplan,* supra. "A factual finding may not be rejected on appeal merely because the reviewing judges personally disagree with the conclusion or would have found differently had they been sitting as the factfinder." *Kaplan* v. *Kaplan,* supra. "This court may reject a factual finding if it is clearly erroneous, in that as a matter of law it is ' "unsupported by the record, incorrect, or otherwise mistaken." *Kaplan* v. *Kaplan,* [supra, 392]'; *Schaffer* v. *Schaffer,* 187 Conn. 224, 228, 445 A.2d 589 (1982); Practice Book § 3060D." *Garrison* v. *Garrison,* 190 Conn. 173, 176, 460 A.2d 945 (1983).

In reviewing the record as regards the two findings that the plaintiff challenges, we cannot say that either finding was clearly erroneous. Practice Book § 3060D. As to the first finding, the plaintiff alleged, in essence, that the defendants' employees told customers destined for the plaintiff's dock that the Mijoy was not sailing that day, thereby depriving the plaintiff of customers. With respect to this allegation, the trial court's memorandum of decision states: "[I]t is of significance that the only direct evidence within the extended number of years in issue was that of an employee of approximately two weeks or less who was discharged with some alleged open hostility to the defendant." The plaintiff claims that this was error because the tes-

timony of at least four other witnesses supported the allegation. The record does not demonstrate that the trial court clearly erred in its finding. Although other witnesses testified that the defendants' employees made false claims about the Mijoy in order to persuade customers to board the Blackhawk, only one witness, the former employee referred to by the trial court, testified from personal knowledge that a potential customer of the Mijoy was dissuaded from boarding the Mijoy because of such misrepresentations, as alleged.

The second factual finding of the trial court attacked by the plaintiff is that no witness was excessively deterred or misled from proceeding to the plaintiff's dock. The record before us again reveals no clear error in the trial court's finding. Although the plaintiff introduced testimony of witnesses who claimed that they were delayed for short periods in reaching the Mijoy dock, none claimed to have been prevented from reaching the Mijoy in time to board. There was only one witness who claimed to have intended to board the Mijoy and did not ultimately do so. That witness testified that as she approached by car the dockage areas on River Street she was directed into a parking lot by a man holding a sign that bore the word "parking." The witness further testified that it was not until she boarded the Blackhawk that she realized she was not on the Mijoy. Concerning this testimony, the trial court concluded that the mistake of the witness was the result of her own misperception rather than any improper solicitation by the defendants. This is buttressed by the trial court's later finding that the name "Blackhawk" appeared both on the boarding tickets purchased at the dock and on the boat itself.

Because we cannot say that the trial court's factual findings were as a matter of law unsupported, incorrect, or mistaken, neither finding is clearly erroneous. Practice Book § 3060D.

The plaintiff also claims that the trial court erred in failing to consider separately the second and third counts of the complaint. The second count alleged that the defendant unjustifiably interfered with the plaintiff's business expectancies and engaged in "unfair competition by intimidation, obstruction or molestation." The third count of the complaint alleged violations of the Connecticut Unfair Trade Practices Act (hereinafter CUTPA); General Statutes §§ 42-110a through 42-110q. In its memorandum of decision the trial court wrote that its consideration of count two "would merge" with that of count three. In the ensuing discussion of the two counts the trial court appears to have used a single standard in determining that the defendants did not engage in unfair, deceptive, or otherwise wrongful competitive practices.

Counts two and three of the plaintiff's complaint state distinct, cognizable causes of action. The common law has long countenanced a cause of action sounding in tort for interference with another's business practices and opportunities. Originally the cause of action was recognized in suits where a defendant was alleged to have interfered with the plaintiff's advantageous contractual relations. Prosser, Torts (4th Ed.) § 129, p. 927. Gradually, perhaps in recognition of an increasingly competitive business climate, the law came to recognize that a merchant might have protectible interests even in business expectations that had not been confirmed by contract. Dean Prosser identifies the decision in *Temperton* v. *Russell*, 1 Q.B. 715 (1893), as the generating force behind this evolution. There, "the Court of Queen's Bench declared that the principles of liability for interference with contract extended beyond existing contractual relations, and that a similar action would lie for interference with relations which were merely prospective or potential." Prosser, supra, § 130, p. 949.

This trend developed rapidly in American jurisprudence and has become an established doctrine in Connecticut. "We, in this state, recognize that a cause of action does exist for unlawful interference with business and that it is not essential to that cause of action that it appear that the tort has resulted in a breach of contract to the detriment of the plaintiff. *Wyeman* v. *Deady,* 79 Conn. 414, 65 A. 129 [1906]; *Skene* v. *Carayanis,* 103 Conn. 708, 131 A. 497 [1926]." *Goldman* v. *Feinberg,* 130 Conn. 671, 674, 37 A.2d 355 (1944). "The law does not . . . restrict its protection to rights resting upon completed contracts, but it also forbids unjustifiable interferences with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry. Full, fair and free competition is necessary to the economic life of a community, but under its guise, no man can by unlawful means prevent another from obtaining the fruits of his labor." *Skene* v. *Carayanis,* supra, 714; *Jones* v. *O'Connell,* 189 Conn. 648, 660, 458 A.2d 355 (1983); *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* 169 Conn. 407, 415, 363 A.2d 86 (1975); *Goldman* v. *Feinberg,* supra.

In order to succeed on a claim of tortious interference with business expectancies, however, the plaintiff must do more than show that the defendant's actions proximately caused a loss to the plaintiff's business. "A cause of action for tortious interference with a business expectancy requires proof 'that the defendant was guilty of fraud, misrepresentation, intimidation or molestation; *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 461, 242 A.2d 708 [1968]; *Skene* v. *Carayanis,* [supra, 715]; or that the defendant acted maliciously. *Goldman* v. *Feinberg,* [supra].' *Kecko Piping Co.* v. *Monroe,* 172 Conn. 197, 201–202, 374 A.2d 179 (1977)." (First brackets in original.) *Jones* v. *O'Connell,* supra.

The CUTPA statute provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). The statute also provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." General Statutes § 42-110g (a). In a private dispute a plaintiff may recover for CUTPA violations only if the proven deceptive acts or practices of the defendant "have a potential effect on the general consuming public." *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 540, 461 A.2d 1369 (1983). If the plaintiff establishes this public interest it may recover simply upon showing that the defendant engaged in a deceptive or unfair practice and that the plaintiff suffered an ascertainable loss of money or property thereby. General Statutes §§ 42-110b (a), 42-110g (a).

Thus, the essential difference between a tort claim for interference with business expectancies and a claim under CUTPA is the standard by which the alleged acts are measured. While liability in tort is imposed only if the defendant maliciously or deliberately interfered with a competitor's business expectancies, CUTPA liability is premised on a finding that the defendant engaged in unfair competition and unfair or deceptive trade practices. The Connecticut General Assembly deliberately chose not to define the scope of unfair or deceptive acts proscribed by CUTPA so that courts might develop a body of law responsive to the marketplace practices that actually generate such complaints. For that reason CUTPA commands that in construing what conduct the act prohibits, courts should be guided by interpretations of the Federal Trade Commission Act, 15 U.S.C. § 45 (a) (1), made by federal courts and

the Federal Trade Commission. General Statutes § 42-110b (b); see *Hinchliffe* v. *American Motors Corporation,* 184 Conn. 607, 617, 440 A.2d 810 (1981). Because CUTPA is a self-avowed "remedial" measure, General Statutes § 42-110b (d), it is construed liberally in an effort to effectuate its public policy goals. See *Hinchliffe* v. *American Motors Corporation,* supra; see also Kintner, A Primer on the Law of Deceptive Practices, pp. 30–31 (1971); Ormstedt & Langer, "The Connecticut Unfair Trade Practices Act," 52 Conn. B.J. 116 (1978). Predictably, CUTPA has come to embrace a much broader range of business conduct than does the common law tort action. *Hinchliffe* v. *American Motors Corporation,* supra; see, e.g., 16 C.F.R. § 13.

In determining whether a practice violates CUTPA, the court should employ these criteria: " '(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise— whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].' *Conaway* v. *Prestia,* [191 Conn. 484, 490–91, 464 A.2d 847 (1983)], quoting *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244 n.8, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972)." *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 568, 473 A.2d 1185 (1984).

A trial court must guard against considering business tort claims and CUTPA claims in the same light. Conduct that might be actionable under CUTPA may not rise to a level sufficient to invoke tort liability. The reverse of that proposition, however, is seldom true. Provided a plaintiff shows that his or her claim is

cloaked with the necessary public interest, it is difficult to conceive of a situation where tortious interference would be found but a CUTPA violation would not. Because the tort standard is more stringent, a plaintiff who alleges both claims is harmed only if the trial court applies the tort standard to the CUTPA claim. A trial court would err in applying the less demanding CUTPA standard to a tort claim, but it is only the defendant, not the plaintiff, who would be harmed thereby.

Our reading of the memorandum of decision indicates that the trial court did the latter in this case. In its decision the trial court noted that it had reviewed all case decisions, treatises, and law journal articles cited by the parties. The trial court also recognized that CUTPA's standard for liability is flexible unlike the more rigid tort standard. Furthermore, although it referred to some tort cases in its discussion, there is no indication in the memorandum of decision that the trial court allowed any common law tort principles to heighten improperly the CUTPA standard applied. Using this lesser standard for both counts two and three the trial court concluded that the plaintiff had not met its burden of proof in establishing that the defendant engaged in unfair or deceptive acts or competition. Therefore, although the trial court should have considered the tort and CUTPA claims separately, the plaintiff was not harmed by the trial court's failure to do so.

There is no error.

In this opinion the other judges concurred.