[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit seeking a real estate commission filed by the plaintiff, Charter House Realty, Inc., a licensed broker and member of the Greenwich Multiple Listing Service (MLS). The plaintiff alleged that it signed a listing agreement with one Ray Williams, the owner of certain property located on Bible Street in Greenwich. The action was subsequently withdrawn as to said Williams.
The other defendants are Ann H. Liu, her husband Leonard Liu, and Park Allyn Realty Association, Inc. (Park Allyn), the employer of Ann Liu. Plaintiff alleges that Ann Liu, a licensed real estate broker and member of the Multiple Listing Service, purchased the Williams house herself, along with her husband, and that her contract of sale with Williams stated that "no broker" had brought the property to the owner's attention. The plaintiff claims that the defendant Liu learned about this property because she and her employer, Park Ally, are members of MLS, through which all brokers belonging to said service became aware that the property was available for sale. In other words, the plaintiff alleges that Liu learned that this house was for sale due to her status as a broker, went to the premises, and made her own deal with Williams to buy his house, without any provision for the payment of a commission to the plaintiff as listing broker.
The plaintiff's original complaint had six counts, but two were stricken by the court and four counts remain. Count Two claims a violation of a state regulation that a real estate licensee shall not attempt to negotiate the sale of real property knowing that the owner has an exclusive listing with another licensee. The third count alleges that the plaintiff is the third party beneficiary of certain rules and regulations of the Greenwich Multiple Listing Service, to wit, that appointments CT Page 4766 involving the sale of property must be conducted through the listing broker, and secondly, that a licensee, who is also an owner, must disclose that interest when the listing is filed with MLS. Count Five alleges a violation of the Connecticut Unfair Trade Practices Act, General Statutes 42-110a (CUTPA). Count Six claims that the defendants tortiously interfered with the contractual relationship, i.e., the listing agreement between the plaintiff and Ray Williams, as the owner of the property in question.
The defendants now move (#130) for summary judgment pursuant to Practice Book 378 et seq. on the ground that there are no genuine issues as to any material facts, and they have submitted depositions of the defendant Ray Williams and his brother Thomas Williams. See Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 579, 573 A.2d 699 (1990), and Connecticut National Bank v. Great Neck Development Co.,215 Conn. 143, 148, 574 A.2d 1298 (1990), regarding the respective obligations of the movant and nonmovant to prove and disprove the existence of genuine issues of material fact.
These depositions make it clear that Ray Williams himself never signed the listing agreement with the plaintiff broker, as required by General Statutes 20-325a(b)(5), but rather that his brother Thomas signed Ray's name; and also that Thomas Williams did not have any kind of agency agreement authorizing him to sign his brother Ray's name. Furthermore, Thomas Williams placed his own personal address on the listing agreement, rather than that of the owner, Ray Williams. Section 20-325a(b)(2). The depositions also indicate that the plaintiff and Ray Williams had a verbal understanding that Williams would not have to pay a commission if he sold the property without the services of a broker, which was apparently the reason why the plaintiff withdrew its suit against Williams, leaving only Mr. and Mrs. Liu and Ann Lui's employer as defendants, an understanding not part of the listing agreement. Section 20-325a(b)(4).
In the first instance a suit by a real estate broker for a commission should be against the owner and seller of property, as that is the party with whom the broker enters into a listing agreement. If the listing agreement had been valid, the plaintiff could sue Williams for the 5% agreed upon commission and, if successful, presumably would owe a percentage thereof to Park Allyn as the selling broker. When the plaintiff withdrew its suit against the owner and seller, I believe it had no further cause of action against any other party. It may be that Mrs. Liu violated a Connecticut State Regulation pertaining to licensed brokers or a rule of the Greenwich Multiple Listing Service, but that type of complaint should be addressed to the agency in question and does not give rise to a lawsuit in this CT Page 4767 court.
With respect to the count claiming tortious interference with contract, a different result might ensure if the underlying listing agreement had been valid under General Statutes20-325a(b). Since, however, this agreement was clearly invalid, this claim in count six, which is based on the listing agreement, must also fail as it presupposes a valid agreement that was allegedly interfered with by the defendant Mrs. Liu.
Count Five claiming a violation of CUTPA stands, I believe, on a different footing, as it is not predicated on a valid listing agreement, but rather refers to, in the words of General Statutes 42-110b(a), ". . . unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." As was said recently in Hernandez v. Monterey Village Associates, 17 Conn. App. 421, 425, 553 A.2d 617 (1989): "The policy behind CUTPA is to encourage litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices." This section and case law make it clear that CUTPA provisions are remedial and should be liberally construed by the courts. See Generally, Sportsmen's Boating Corp. v. Hensley, 192 Conn. 747, 756, 474 A.2d 780 (1984); Hinchliffe v. A.M.C., 184 Conn. 607, 615 n. 4, 440 A.2d 810
(1981).
In order to prevail under CUTPA, a plaintiff must I sufficiently allege facts which may establish either "unfair methods of competition or deceptive acts or practices." McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567,473 A.2d 1185 (1984) (emphasis added). Connecticut courts have adopted the criteria set out in the so-called "cigarette rule" by the Federal Trade Commission for determining when a practice is unfair:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].
Sportsmen's Boating Corp., supra, 756, quoting FTC v. Sperry 
Hutchinson Co., 405 U.S. 233, 244-45 n. 5 (1972). All three criteria do not need to be satisfied. McLaughlin Ford, Inc., supra, 569, n. 15. CT Page 4768
I believe that there is a genuine issue of material fact as to whether Mrs. Liu engaged in unfair methods of competition or unfair or deceptive acts in the conduct or her real estate business that prevents the granting of summary judgment. To the contrary, I think that the resolution of the question of the propriety of her conduct should be resolved by the trier of fact. Our role is not to determine issues of material fact, but only to determine whether such issues are in fact present. Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "Whether a practice is unfair and thus violates CUTPA is an issue of fact." DeMotses v. Leonard Schwartz Nissan, Inc., 22 Conn. App. 464,466, 578 A.2d 144 (1990).
Accordingly, the defendants' motion for summary judgment is granted as to all counts except count five alleging a violation of CUTPA, as to which said motion is denied.
SO ORDERED.
Dated at Stamford, Connecticut this sixth day of December, 1990.
LEWIS, JUDGE