[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Joseph Lowther, seeks a preliminary injunction to prohibit defendant Louis Hochberg from soliciting business from present customers of plaintiff's business, which is known as Connecticut Vision Center, in East Haven. the plaintiff, an optician, further seeks injunctive ruling against Charles Guthrie, Hochberg's partner in an optical practice in Hamden.
The plaintiff alleges that the defendant Hochberg had violated the Connecticut Uniform Trade Secrets Act, ("CUTSA") 35-50 et seq. C.G.S. and the Connecticut Unfair Trade Practices Act, ("CUTPA") 42-110 et seq. C.G.S. by contacting the plaintiff's customers listed in a computer disc he retained and sending them solicitations.
The plaintiff alleges that defendant Guthrie has violated the same statutes in that defendant Hochberg is now associated with Guthrie in an optical practice known as Omni Vision Eye Associates and that Guthrie has joined Hochberg in used the plaintiff's customer list and records to solicit the plaintiff's customers. CT Page 11117
The prerequisites to preliminary injunctive relief are that the applicant (1) probable success on the merits of the claim and (2) that the harm to the movant from denial will exceed the harm to the defendant from issuance. Griffin Hospital v. Commission on Hospitals and Health care, 196 Conn. 451, 45 (1985, citing Olcott v. Pendleton, 128 Conn. 292,295 (1941). The Court in Griffin hospital, supra, at 458, also cited with approval Covenant Radio Corporation v. Ten Eight Corporation,35 Conn. Sup. 1, 3 (1977), which enumerates as additional requirements for injunctive relief (3) irreparable injury and (4) lack of an adequate remedy at law.
The plaintiff established by uncontroverted evidence that between 1988 and the end of 1991, he and Hochberg had an arrangement by which Hochberg, an optometrist, would work at Connecticut Vision Center twelve to fifteen hours a week seeing customers who had come in or made appointments as clients of Connecticut vision Center. Hochberg made himself a back-up computer disk of the business computer records containing the names and addresses of the patients he had seen, and he retained it after he left the plaintiff. Hochberg had no equity interest in Connecticut Vision Center and paid no rent or other expenses. For each eye examination he performed, he retained a percentage of the fee. As to contact lens patients, he retained the whole fee charged.
During Hochberg's association with the plaintiff, it was the plaintiff who advertised for customers for Connecticut Vision Center.
In late 1991 the plaintiff overheard Hochberg telling customers at his East Haven establishment that they could pick up contact lens at a Hamden location, where Hochberg was also working. The plaintiff severed his relationship with Hochberg at the end of December 1991.
Thereafter, friends and neighbors of the plaintiff reported to him that they had received individually addressed letters from Hochberg on the letterhead of Omni Vision Eye Associates containing, inter alia, the following statements:
 As a valued contact lens patient of mine, I would like to take this opportunity to wish you a Happy New Year and to announce the opening of my new Optometric practice at 1976 Whitney Avenue in Hamden. I will no longer be located at the East Haven location. The new practice name is Omni Vision Eye Associates, Inc. and we are conveniently located . . . . All of your contact lens records as well as your eye examinations records have been transferred to our new larger office. . . .
The court finds that this solicitation letter misleadingly suggests CT Page 11118 that the plaintiff's business has relocated and that Omni Vision Eye Associates is a new name for the same eye car facility the addressee had been patronizing in East Haven.
The defendants also sent out a general news letter, not containing any mention of the plaintiff, to customers of the plaintiff whose names and addresses were contained in the back-up disc retained by Hochberg. (Ex. C).
The plaintiff failed to testify concerning any understanding or agreement he may have had with Hochberg concerning client records. He offered only the sketchiest of descriptions as to the nature of his arrangement with Hochberg, who was not an employee and with whom there was not, apparently, any written contract. Since a back-up disc of the records of the clients seen by Hochberg was made the plaintiff's knowledge and apparent acquiescence, the court does not find that the plaintiff had established a probability of success on the merits of his CUTSA claims. Since the record is silent as to any expectations between the plaintiff and Hochberg concerning the records of the persons with whom Hochberg had appointments at the plaintiff's establishment, the court has no basis for a finding of "misappropriation" of "trade secrets" as variously defined in 35-506(b) C.G.S.
The plaintiff has, however, established that the defendants' solicitation letters to his customers were misleading and caused confusion as to whether the plaintiff had relocate his own business.
The court finds that the plaintiff has established that he will probably succeed on the merits of his claim that the defendant engaged in an unfair and deceptive practice in violation of Connecticut Unfair Trade Practices Act, 42-110b(a) C.G.S. in connection with this misleading solicitation effort. An action for equitable relief is authorized by 42-110g
C.G.S.
Section 42-110b C.G.S. defines unfair trade practices as "unfair methods of competition and unfair or deceptive acts on practices in the conduct of any trade or commerce," and counsels adherence to the interpretations of the Federal Trade Commission and the federal courts of Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)) in determining whether conduct constitutes an unfair trade practice. CUTPA conditions recovery of statutory remedies on a showing that the plaintiff suffered an "ascertainable loss . . . as a result of the use or employment of a method, act or practice prohibited by Section 42-110b . . . ." It is well settled that in determining whether practice or act violated CUTPA, the following criteria are to be employed: CT Page 11119
 (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;
(2) whether it is immoral, unethical, oppressive or unscrupulous;
(3) whether it causes substantial injury to consumers.
Web Press Services Corporation v. New London motors, Inc., 20 Conn. 342,355, 525 A.2d 57 (1987); Conaway v. Prestia, 191 Conn. 484, 492-93,464 A.2d 847 (1983). In Web Press, supra, the Connecticut Supreme Court has summarized the criteria for finding a CUTPA violation as follows: "[t]hus, violation of CUTPA may be established by showing either an actual deceptive practice see, e.g., Sprayfoam, Inc. v. Durant's Rental Centers, Inc., 39 Conn. Sup. 78, 468 A.2d 951 (1983); or a practice amounting to violation of public policy. See, e.g., Sportsmen's Boating Corporation v. Hensley, 192 Conn. 747, 756, 474 A.2d 780 (1984).
The plaintiff established that the defendant's mailings were misleading, unscrupulous and unfair and were likely to confuse consumers.
The court does not, however, find that the mailing of general information concerning the defendants' services, such Exhibit C, can be challenged as an unfair trade practice. In the absence of any evidence concerning any actual agreement concerning the identity of persons to whom Hochberg provided services at plaintiff's establishment, the court is unable to determine whether these people were the "customers" of the plaintiff, of defendant Hochberg, or of both of them. Under the circumstances, a general solicitation of these people, containing no mention of the plaintiff or his business, is not likely to be proved to a violation of CUTPA.
The defendants argue that the plaintiff has an adequate remedy at law in that he could seek money damages as to each client lured away by deceptive communications.
Severe difficulty in ascertaining the amount of loss has been found to satisfy the requirement of "irreparability." Conn. Ass'n of Clinical Laboratories v. Conn. Blue Cross, Inc., 31 Conn. Sup. 110, 120 (1973). The ability of a plaintiff to return to court repeatedly for money damages after each infliction of harm has been held not to be an adequate remedy at law that would require denial of injunctive relief. Berin v. Olson,183 Conn. 337, 342-3 (1981). CT Page 11120
The plaintiff has made the requisite showing for injunctive relief as to some, though not as to all of his claims. Accordingly, it is hereby ordered that the defendants, Louis Hochberg and Charles Guthrie, their agents, servants, employees and those acting in concert with them be and hereby are enjoined from initiating any communication to any present or past customer of the plaintiff that suggests in any way that the services of either defendant or of Omni Vision Eye Associates, Inc. are continuation, affiliate, successor, branch, relocated form, or otherwise a replacement of services formerly obtained from the plaintiff or from the Connecticut Vision Center. This order shall be in effect until further order of the court.