[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action arises out of a contract between the plaintiff CT Page 5831 homeowner Dolores Pagano (Pagano) and the defendant contractor Michael D. Maniscalco (Maniscalco). The complaint is brought in five counts alleging (1) a breach of contract; (2) negligence; (3) a violation of the Home Improvement Act; (4) a violation of the Connecticut Unfair Trade Practices Act, §§ 14-110a, et seq. of the Conn. General Statutes; and (5) violations of the Home Improvement Act §§ 20-427 (i) and 20-429 (6) constituting a violation of the Connecticut Unfair Trade Practices Act (CUTPA) § 42-110a of the Conn. General Statutes.
The defendant has filed an answer in essence denying the Plaintiff's allegations. In addition, the defendant has filed special defenses to the complaint alleging the running of the Statute of Limitations, in particular §§ 52-577 and 42-110q(f), well as a failure on the part of the plaintiff to mitigate her damages.
On or about August 20, 1988, the parties entered into a written contract wherein the defendant was to enclose an existing deck which was attached to the rear of the plaintiff's house. The enclosure was to consist of a roof with three skylights and custom screens. The total amount of the contract was $5600.00. Prior to the signing of the contract, the parties had met on only one occasion, through there had been some phone contact prior to the signing. Work was commenced in August and completed sometime prior to Thanksgiving. The check for the final payment, which was due on completion, is dated October 14, 1988. It was shortly after in the fall of 1988 that problems with the construction began to arise. The first complaints related to leaking around the skylights. Subsequently, the plaintiff complained of continual leaking, cracking of the skylights, the gutters not taking the runoff, cupping of the roofing and accumulation of rainfall on the roof.
The first complaint occurred within weeks of the completion and concerned leaking around the skylights. The defendant responded indicating that he would visit the site during a rainstorm in order to observe the conditions. The defendant considered this a panic call but did observe some spotting on the deck. He thereafter placed some of what he alleged to be roofing cement on the areas he deemed might be causing the problem. He returned on subsequent occasions on complaint of further leaking and cracking of the skylights as well as the gutters not being effective in handling the runoff. This continued for a period of 17 months without success and the conditions worsening. The defendant offered to remove the skylights and close up the openings CT Page 5832 as the ultimate solution.
When the skylights in question arrived on the site, the plaintiff noticed that the instructions indicated a requirement that the pitch of the roof should be three inches to 12 inches of rise (3:12). Actual measurement showed the pitch to be 1 1/2 inches to 12 inches. The defendant told her it would work out; that he did good work. The discussion at that time also centered around plaintiff's concern over the use of plexiglass. The plaintiff alleges that the defendant indicated to her that the screening was more costly than expected and he had to save money by using plexiglass, whereas the defendant alleges that he explained the options of using glass over plexiglass, glass being more expensive, and he alleges that the decision was made by the plaintiff, who was on a medical disability and was not working and therefore wished to save money. The motivation for the decision was to save money.
The evidence indicates very unsightly conditions. The skylights are cracking and must obviously be leaking. There are layers of an unsightly material surrounding the skylights, with numerous cracks not impervious to weather. The roof has a curl in it with severe ponding existing.
The court finds that the project was done in an unworkmanlike manner, constituting a breach of contract. The contract requires that the work be done in a skillful, competent and workmanlike manner. This the defendant has failed to do. Everyone who testified, including the defendant, acknowledged that the roof pitch was less than the required 3:12 pitch. Nevertheless, even after the plaintiff showed her concern, the defendant indicated that it would be close and went on to install the skylights contrary to the manufacturer's specifications. In fact, defendant's expert, Mr. Breiner, in his testimony relative to the skylights, indicated that "the whole installation was not good." While the roofing as applied was not very aesthetic, the experts were generally of the opinion that the condition referred to as "cupping" would flatten out with the weather. There was testimony, however, that some of the rolled roofing was cut short, causing the rainwater to "spin off" into the back of the gutters. The obvious dip in the roof causing heavy accumulation of water is attributable to incorrect framing and trim installation by plaintiff's expert: Mr. Black. Several experts testified that the skylights should have been installed with a curb which would have deflected the rainfall around and away from the skylights. While the CT Page 5833 specifications said nothing about curbs, they did admonish the installer that the pitch should be 3:12. It in fact was 11/2:12.
The plaintiff's second count lies in negligence. In the case of Johnson v. Flammia, 169 Conn. 491, 496, it was held that: "[a] party may be liable in negligence for the breach of a duty that arises out of a contractual relationship. " The test to be applied in the instant matter is whether an experienced home remodeler knowing what was known or should have been known concerning the construction of the roof and gutters and the installation of the skylights particularly on a roof with less than a three inch pitch, would anticipate that harm of the general nature of that suffered in this case, was likely to result.
The evidence shows that the skylights were installed contrary to specifications, and if so installed, then they should have been installed on a curb. In addition, the roof an gutters were installed in such a manner that rainwater would not flow off into the gutters. Furthermore, the construction of the roof allowed water accumulate and flow off the sides rather than into the gutters.
Count three of the plaintiff's complaint alleges a violation of the Home Improvement Act, namely § 20-427 (i) of the Conn. General Statutes, which reads as follows:
 "No contractor shall commence work unless each applicable building or construction permit has been obtained as may be required under the General Statutes or local ordinances."
While it is true that no building permit was obtained, the evidence indicates that, subsequent to the signing of the contract, a discussion took place between he parties relating to a permit. Responding to the plaintiff's inquiry relating to the necessity of a building permit, the defendant indicated that since the structure was already in existence and its shape was not being changed, a building permit might not be required. He cautioned her, however, that she should discuss its necessity with the building inspector. This the plaintiff failed to do. The plaintiff was at all times fully aware of the fact that no building permit had been obtained and appeared to acquiesce in the decision, there having been some previous disagreement with the building department.
The fourth count of plaintiff's complaint alleges a violation of the Connecticut Unfair Trade Practices Act, §§ 42-111a, et seq. CT Page 5834 of the Conn. General Statutes, alleging that the acts of the plaintiff constituted conduct that was immoral, oppressive and unscrupulous.
"In determining whether a practice violates CUTPA the court should employ these criteria, `(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]'Sportsmen's Boating Corporation v. Hensley, 192 Conn. 747, 756;Canaway v. Prestia, [19] Conn. 484, 490-91, 464 A.2d 847 (1983), quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233, 244 n 8,92 S.Ct. 898, 31 L.Ed.2d 170 (1972)." McLoughlin Ford v. FordMotor Co., 192 Conn. 558, 568, 473 A.2d 1185 (1984).
While the plaintiff does allege one of the criteria set forth above, the court finds that it has not sustained its burden of proof in establishing defendant's conduct .as being immoral, unethical, oppressive or unscrupulous.
The fifth count alleges two violations of the Home Improvement Act which violations constitute an unfair trade practice. The Home Improvement Act violations consist of the following: a violation of § 20-427, he failure to obtain a building permit; and 429(6), the failure to a note right of cancellation in the contract. The plaintiff alleges that these violations constitute a violation of § 42-110 (a) of the Unfair Trade Practices Act [CUTPA].
The building permit issue the court has already resolved in the court's earlier finding that the plaintiff acquiesced in the defendant's failure to obtain such a permit.
As for the plaintiff's right of cancellation, § 20-429 (a)(6) reads as follows:
 "No home improvement contract shall be valid or enforceable against an owner unless it . . . (6) contains a notice of the owner's cancellation rights in accordance with the provisions of Chapter 740. . . ." (Emphasis added.) CT Page 5835
Section 20-427 (b) contains the following language:
 ". . . . A violation of any of the provisions of this chapter shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b.
Section 42-110b(a) reads:
 "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."
The benefit created under § 20-429 (a)(6) runs in favor of the plaintiff, giving her the right if she so chooses to declare the contract invalid and unenforceable. In this instance, the plaintiff, by her actions, is trying to enforce the very contracts that her fifth count attempts to invalidate.
The defendant raises special defenses and pleads the appropriate Statute of Limitations as to counts two, three, four and five.
As to the second count which lies in negligence, the defendant claims that Conn. General Statutes § 52-577 reads as follows:
 "No action rounded upon a tort shall be brought but within three years from the date of the act or omission complained of."
As to the third, fourth and fifth counts, since they all implicate violations of the Unfair Trade Practices Act (CUTPA), the appropriate Statute of Limitations, Conn. General Statutes 110g(f), reads as follows:
 "An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."
The issue before the court is when do the statutes begin to run, i.e., from the date of the initial completion of the work or from the date the defendant indicated to the plaintiff that he would no longer attempt to correct the conditions existing and offered to remove the skylight and close up the roof. CT Page 5836
Chronologically, the contract was dated August 29, 1988. Both parties indicated the work was completed in November prior to Thanksgiving. However, the final payment, pursuant to the contract, is dated October 14, 1988. The suit was commenced on September 16, 1992 by abode service upon the defendant. It is the plaintiff's contention that the respective statutes were tolled until December 1991.
Our Supreme Court has held, "[u]nless the statutes of limitation of some other states applicable to unfair trade practices legislation analogous to our CUTPA, which expressly allow a certain period following the discovery of the deceptive practice for commencing suit . . .; Section 42-110g(f) provides only that an action must be brought within three years `after the occurrence of a violation of his chapter.'"
The court went on further to state: "In construing our general tort statute of limitations, General Statutes Sec. 52-577, which allows an action to be brought within three years `from the date of the act or omission complained of,' we have concluded that the history of the legislative choice of language precludes any construction thereof delaying the star of the limitation period until the cause of action has accrued or the injury has occurred."Fichera v. Mine Hill Corporation, id., Prokolkin v. General MotorsCorporation, supra, 294-297.
Under the circumstances as they exist herein, the court finds that the statute of limitations have expired as they apply to counts two, three, four and five. As to count one, the court finds for the plaintiff.
As for the damages incurred, the court has considered all of the testimony of the various experts both for the plaintiff and the defendant. Based on such testimony, the court awards damages in the amount of $4200.00
Judgment may enter in accordance with the above.
By The Court
Curran, J. CT Page 5837