[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings her complaint in two counts. The first count alleges violations of § 36a-706 C.G.S. by the defendant Bristol Mortgage Corporation, and invokes the provisions of §36a-707. The second count pleads a violation of CUTPA.
The plaintiff was desirous of purchasing a home and contacted the seller of Rollwood Associates concerning a unit in their condominium complex in Guilford, Connecticut. She contacted the defendant who caused to be prepared a worksheet for the purchaser and was told that she would qualify for 100% financing. The contract called for a closing date of March 1, 1994. She was told that the interest for her loan would float, but that the rate could be locked in at any time. A mortgage rate lock-in agreement was signed at that time. The requested loan was $151,700, and the type of loan was a VA 1 year A.R.M. for 30 years. A statement on the reverse side of the agreement read in part "Applicants are solely responsible for the rate-lock option selection."
On February 2, 1994, the plaintiff called Josephine Brown, a mortgage analyst, and told her to lock her in for a mortgage This was for $151,700, and was changed to VA 30 years fixed, 0/0 for 30 years. The termination date for the agreement was April 3, 1994.
Meanwhile, the plaintiff turned out to be a persistent customer. She went to Hartford in order to expedite the processing of the loan at the FHA office on March 22, 1994. She took information back to the builder and told him to complete the unit. FHA issued a letter of approval on April 4, 1994. The plaintiff called the VA office in New Hampshire and was told that FHA was the last thing they would do. On April 4, 1994, the plaintiff requested an extension, but it was denied.
On June 6, 1994, the plaintiff received a commitment for a mortgage of $151,700. The mortgage was a VA 1 year ARM, 0/0, 30 years at 6.50%. The mortgage was closed on June 30, 1994.
 I.
The plaintiff claims that the actions of the defendant were in contradiction of the statutes, § 36a-706 et seq., C.G.S., which reads in part:
 ". . . No mortgage lender shall enter into a mortgage rate lock-in agreement unless such agreement is in writing and the CT Page 2369 period for which the terms are locked in is at least as long as the mortgage lender's good faith estimate of the anticipated time from when the mortgage loan application is submitted to the lender to the time when such lender will be ready to close such loan, taking into consideration current market conditions and the processing requirements for the type of first mortgage loan in question. . . ." Sec. 36a-706 (a), C.G.S.
The rate lock-in program was available for the type of mortgage loan which the plaintiff was seeking
Exhibit E is a copy of the mortgage rate lock-in agreement. It was signed by both the plaintiff and the mortgage analyst of the defendant.
The exhibit further states: "The terms you choose will only be available for a period of time that we specify when you lock-in. (This is called the `Lock-in Period.')" Ms. Brown further testified that this lock-in period was determined by the defendant to be 60 days. This was the lender's "good faith estimate". At first, in December 1993, Amy Kasmin Criscuolo put the plaintiff's mortgage application in the "floating" range, since she was, at the time, fearful that the rates may rise. On February 2, 1994, Josephine Brown, at the request of the plaintiff, put her application into the lock-in category as shown by the agreement entered into evidence. Both testified that the 60 day rate lock-in period represented the good faith estimate of the average for closing on FHA/VA, taking into consideration current market trends and the type of loan in question.
 "To ignore the plain meaning of words contained in a statute does not comport with tenets of basic statutory construction."
Winchester v. Conn. State Board of Labor Relations, 175 Conn. 349-360.
The plaintiff failed to take advantage of the provision of § 36a-706 (a)(2) and § 36a-706 (b), "Waiver is the intentional relinquishment of a known right." Goldenberg v.Corporation Air, Inc., 189 Conn. 504, 510.
 II.
The second count sounds in CUTPA: CT Page 2370
 "It is well settled that in determining whether [an act or] practice violates CUTPA we have `adopted the criteria set out in the "cigarette rule" by the federal trade commission for determining when [an act or] practice is unfair: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers competitors or other businessmen]." Conaway v. Prestia, [191 Conn. 484, 492-93, 464 A.2d 847 (1983)], quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233, 244-45
n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972) . . .' McLaughlin Ford, Inc. v. Ford motor Co., 192 Conn. 558, 567-68, 473 A.2d 1185 (1984).
 "`All three criteria do not need to be satisfied to support a finding of unfairness A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed. Reg. 59, 614, [and] 59, 635 (1978)' (Internal quotation marks omitted.) Id., 569 n. 15. "Thus a violation of CUTPA may be established by showing either an actual deceptive practice; see, e.g., Sprayfoam, Inc. v. Durant's Rental Centers, Inc. 39 Conn. Sup. 78, 468 A.2d 951 (1983); or a practice amounting to a violation of public policy. See, e.g., Sportsmen's Boating Corporation v. Hensley,
[192 Conn. 747, 474 A.2d 780 (1984)].' Webb Press Services Corporation v. New London Motors, Inc., [supra, 203 Conn. 355]. Furthermore, a party need not prove an intent to deceive to prevail under CUTPA. See id., 363 (knowledge of falsity, either constructive or actual, need not be proven to establish CUTPA violation)." Cheshire Mortgage Service, Inc. v. Montes, supra, 223 Conn. 105-106."
Normand Josef Enterprises, Inc. v. Connecticut National Bank,230 Conn. 486, 522-523.
None of the defendant's actions rose to a level that the act would be cognizable under the provisions of the Act. CT Page 2371
Plaintiff, having failed to prove the essentials of her complaint, judgment may enter for the defendant on both counts.
Robert P. Burns, Judge