[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT BRYAN ROBIK'S MOTION TO STRIKE (#215)
The underlying litigation is concerned with the efforts of the plaintiff, the defendants and various other entities and individuals to obtain control over apparently valuable Norwalk waterfront property for purposes of real estate development.
The pertinent alleged facts are as follows. The plaintiff First Fairfield Funding, LLC (First Fairfield), is a Connecticut limited liability company. On August 16, 2000, the Norwalk, Connecticut real property at issue was owned by Teamwork Holdings, LLC (Teamwork). On that date, Teamwork entered into a contract for the sale of that property to First Fairfield.
The defendant Flagstar Ventures, LLC (Flagstar) is a Connecticut limited liability company whose members are Hector Natera, James Scaccia, and the defendants Bryan Robik and Kevin Robik. Sometime between August 16, 2000 and October 25, 2000, Flagstar negotiated with First Fairfield for the purpose of obtaining an assignment of First Fairfield's rights under the contract to purchase the Norwalk property.
On October 25, 2000, Proprios Limited, LLC (Proprios), a Connecticut limited liability company, purchased the ownership interest in Teamwork held by Michael L. Goldman and Peter M. Joseph, thus acquiring control of Teamwork. The manager of Proprios was James Scaccia and the members of CT Page 891 Proprios were Scaccia, Natera, and the defendants Bryan Robik and Kevin Robik.
Proprios was the sole member of Teamwork as of October 25, 2000, on which date Teamwork transferred the Norwalk property to the defendant SSMLN, LLC (SSMLN), a Connecticut limited liability company. One of the managers of SSMLN was the defendant Bryan Robik, and its members included Natera, Scaccia, and the defendants Bryan and Kevin Robik (or entities owned and controlled by them). Following its acquisition of the property on October 25, 2000, SSMLN, acting through Bryan Robik as manager, mortgaged the property to Kevin Robik to secure a debt of $1,375,000.
In its complaint, First Fairfield seeks specific performance of its contract to purchase the subject Norwalk property, as well as damages. The operative complaint is the second revised complaint dated August 15, 2001 (#211), alleged in nine counts: breach of contract (first count); tortious interference (second count); intentional fraudulent transfer of fee interest (third count); constructive fraudulent transfer of fee interest (fourth count); intentional fraudulent transfer of mortgage interest (fifth count); constructive fraudulent transfer of mortgage interest (sixth count); intentional fraudulent transfer of cash proceeds (seventh count); constructive fraudulent transfer of cash proceeds (eighth count); and violation of Connecticut Unfair Trade Practices Act ("CUTPA") (ninth count).
On September 13, 2001, Bryan Robik filed a motion to strike the second and ninth counts of the second revised complaint. Both counts are directed against all of the defendants. The grounds for Robik's motion to strike are as follows:
 1. Count Two fails to state a claim for tortious interference with contract, because plaintiff has not pled any facts demonstrating that the alleged interference was wrongful beyond the fact of interference with the contract to purchase real property in Norwalk.
 2. Count Nine should be stricken because plaintiff has alleged only a simple breach of contract, which is not actionable under the Connecticut Unfair Trade Practices Act.
 3. Counts Two and Nine should also be stricken as to Bryan Robik because plaintiff has not alleged any facts that would subject him to personal liability for actions taken by limited liability companies of which he is CT Page 892 alleged to be a member.
First Fairfield has opposed the motion to strike.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of the complaint . . . to state a claim upon which relief can be granted . . ." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270 (1998). "A motion to strike admits all facts well pleaded." Parsons v. United Technology Corp., 243 Conn. 66, 68 (1997). "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.) Lijedahl Brothers, Inc. v. Grigsby,215 Conn. 345, 348 (1990). "[A motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Citations omitted; emphasis omitted.) Mingachos v. CBS,Inc., 196 Conn. 91, 108 (1985). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp., 240 Conn. 576, 580
(1997). "Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . ." (Citation omitted; internal quotation marks omitted.) Gazo v. Stamford,255 Conn. 245, 260 (2001). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted.) Novametrix Medical Systems v. BOCGroup, Inc., 224 Conn. 210, 215 (1992)
The court denies the motion to strike the second count alleging tortious interference with contract. The Connecticut Supreme Court "has long recognized a cause of action for tortious interference with contract rights or other business relations. . . ." (Citation omitted; internal quotation marks omitted.) Daley v. Aetna Life and Casualty Co.,249 Conn. 766, 805 (1999). "A claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct. . . . Appleton v. Board of Education, 254 Conn. 205,212-13 (2000). The supreme court has held, however, that "not every act that disturbs a contract or business expectancy is actionable . . . [F]or a plaintiff successfully to prosecute such an action, it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the CT Page 893 defendant acted maliciously. . . . [A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper means. . . . The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification. . . ." (Citations omitted; internal quotation marks omitted.) Daley v. Aetna Life and Casualty Co., supra,249 Conn. 805-06.
In its opposition papers (#220), pages 3 through 4, First Fairfield argues that its tortious interference claim against Robik in the second count consists of three essential facts, all of which are properly alleged, as follows:
 (i)First Fairfield had an enforceable contract to buy certain real estate from the owner ("Teamworks"),
(ii)Robik had knowledge of such contract, and
 (iii) Robik worked in concert with others to formulate and then to effectuate a plan by which Teamworks was induced (through the device — the keystone of the plan — of purchasing ownership and thus control of Teamworks) to breach its contract with First Fairfield and instead to sell the property to a limited liability company owned by Robik and his fellow participants in the plan.
First Fairfield contends that Robik has mischaracterized its allegations in his motion to strike, because he ignores two of the three most essential facts alleged — Robik's knowledge of a prior contractual interest and his participation in the plan to interfere with it. "This materially incomplete view of the allegations results in a faulty understanding of First Fairfield's legal theory." Id., 5.
It has been repeatedly made clear by the Connecticut Supreme Court that a cause of action for tortious interference requires the pleading of more than the existence of a business relationship, the defendant's interference and the plaintiff's resulting loss. See Daley v. AetnaLife, supra, 249 Conn. 805-06. The tortious interference must be wrongful by some measure beyond the fact of the interference itself. Id.
The second count asserts in detail that Robik, with others, essentially obtained control of Teamwork and conveyed the property to the newly formed SSMLN, which they controlled, when they were aware at the same time of First Fairfield's contract for the same property. Paragraph 12 of CT Page 894 the second count alleges that following the transactions that resulted in the conveyance of the property to defendant Kevin Robik, the Teamwork and Proprios entities "would be stripped of all assets" and the property encumbered by a mortgage $475,000 greater than the contract purchase price. Paragraph 13 of the second count alleges that the tortious interference complained of was "effected with improper motive and through the use of improper means and/or with malice, in that it was part of a fraudulent, immoral and unscrupulous scheme to attempt to deprive the plaintiff of the benefits of the contract." These clearly are allegations of motive and intent beyond a mere desire to obtain a piece of property.
The "scheme" was the successful attempt to purchase property, which the alleged participants knew First Fairfield had a contract to purchase. This scheme included stripping contractual entities of all assets and then encumbering the property with an inflated mortgage. First Fairfield has pleaded facts demonstrating that the alleged interference was wrongful beyond the mere fact that there was interference with the contract to purchase. The motion to strike the second count is denied.
In its Opposition papers at pages 16 and 17, First Fairfield indicates that its CUTPA claim is based on the facts alleged in the second count: "The essential facts on which the CUTPA claim is based are those contained in the second count alleging tortious interference, all of which allegations are repeated in the ninth count." First Fairfield concludes that since its complaint states a claim for tortious interference, then those same allegations are sufficient to state a CUTPA claim.
The criteria for a CUTPA action would be satisfied by the allegations of the tortious interference claim coupled with a public interest.Sportsmen's Boating Corp. v. Hensley, 192 Conn. 747, 756 (1984). CUTPA "is aimed at eliminating or discouraging unfair methods of competition and unfair or deceptive acts or practices." (Internal quotation marks omitted.) Hinchcliffe v. American Motors Corp., 184 Conn. 607, 616-17
(1981) (quoting General Statutes § 42-110b). In enacting CUTPA, the legislature "deliberately chose not to define the scope of unfair or deceptive acts proscribed. so that courts might develop a body of law responsive to the marketplace practices that actually generate such complaints." Sportsmen's Boating Corp. v. Hensley, supra, 192 Conn. 755. "While liability in tort is imposed only if the defendant maliciously or deliberately interfered with a competitor's business expectancies, CUTPA liability is premised on a finding that the defendant engaged in unfair competition and unfair or deceptive trade practices. Id. "[I]t is difficult to conceive of a situation where tortious interference would be found but a CUTPA violation would not." Id., n. 4. CT Page 895
Robik asserts in his motion to strike that the CUTPA claim is merely one for breach of contract. However, the allegations contained in paragraphs 12 and 13 of the second count and incorporated in the CUTPA claim (ninth count) invoke the concepts of morality, ethics and oppressive or unscrupulous means, the very same questions CUTPA was designed to remedy. See McLaughlin Ford, Inc. v. Ford Motor Co.,192 Conn. 558, 568 (1984).
First Fairfield's complaint against Bryan Robik individually does not seek to pierce the corporate status of the various entities involved in the transactions at issue. Rather, it relies on his role in "aiding and abetting" the tortious conduct of such entities. See 4 Restatement (Second) Torts, § 876 (1992). Bryan Robik, along with others, is alleged to have participated in the commission of a tort. It is his misconduct, not his status as a member or manager of a limited liability company, that is the basis of the individual liability claims against him. The motion to strike the ninth count is denied.
 CONCLUSION AND ORDER
The motion to strike is denied. Defendant Bryan Robik shall file his responsive pleading within fifteen days of the filing date of this memorandum of decision.
ROBERT F. McWEENY, J.