[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Three former employees of the Danbury Cemetery Association, Inc., brought a nine count complaint against the defendant, PaineWebber, Inc., alleging three causes of action: tortious interference with a contract, intentional infliction of emotional distress and violation of the Connecticut Unfair Trade Practices Act (CUTPA). The plaintiffs, who were members of a union, allege that an agent of the defendant arranged to have them fired a month before their collective bargaining agreement was set to expire, despite the fact that their employer sought to negotiate a new contract with them. Through a series of secret meetings, the defendant's agent, Jackson Eno, formulated a plan to have the Danbury Cemetery Association, the employer, rid itself of the union by contracting with another company to do the work the plaintiffs did. Thereafter, the employer would be able to invest money with Eno's employer, PaineWebber. The plaintiffs pleaded that Eno acted within the scope of his employment and for the defendant's benefit.
The defendant moved to strike all nine counts of the May 13, 1998 amended complaint arguing that the allegations were insufficient to support the three claims. The defendant contends that not only is the common law claim of tortious interference with a contract preempted by the federal Labor Management Relations Act (LMRA), but also, the plaintiffs have not pleaded the necessary elements of the tort. Moreover, the defendants assert that the plaintiffs' allegations concerning the intentional infliction of emotional distress counts are conclusory, that mere termination of employment does not rise to the level of extreme and outrageous conduct and that Eno was not acting within the scope of his employment in furtherance of the defendant's business. Finally, the defendants argue that the CUTPA claim cannot remain because PaineWebber is not in business of the complained-of activity: cemetery maintenance work. CT Page 9814
In response, the plaintiffs contend that the complaint alleges the required elements of a tortious interference claim, that Eno acted as an agent for the defendant and that Sec.31-51bb of the General Statutes gives the requisite authority for the suit despite the existence of a collective bargaining agreement. In addition, the plaintiffs argue that they have pleaded sufficient facts to state a claim of intentional infliction of emotional distress and a jury should decide whether the conduct was extreme and outrageous. As to the CUTPA claim, the plaintiffs assert that this statute is broadly construed by the courts and is not limited to cases involving consumer injury.
"The purpose of a motion to strike is to contest . . ., the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Faulkner v. United Technologies Corp.,240 Conn. 576, 580 (1997). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix MedicalSystems. Inc. v. BOC Group, Inc. 224 Conn. 210, 215 (1992).
"Section 301 of the [Labor Management Relations Act] LMRA governs actions by an employee against an employer for breach of a collective bargaining agreement." Vorvis v. Southern NewEngland Telephone Co., 821 F. Sup. 851, 854 (D. Conn. 1993). Section 301 provides in relevant part:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185 (a).
Congress has the authority under the Supremacy Clause of ArticleIV of the United States Constitution to preempt state law to ensure uniformity of that area of the law. SeeAllis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208,105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The United States Supreme Court has determined that it was Congress' intent that "questions CT Page 9815 relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. . . . Therefore, state law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by [an] agreement of private parties, are preempted by those agreements." Allis-Chalmers Corp. v.Lueck, supra, 211-13.
However, "a state law cause of action is not preempted by the [LMRA] if it involves rights and obligations that exist independent of the CBA [collective bargaining agreement]."Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 260,114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). More specifically, "where the resolution of a state law claim depends on an interpretation of the CBA, the claim is preempted, . . . [but] `purely factual questions' about an employee's conduct or an employer's conduct and motives do not `requir[e] a court to interpret any term of a collective bargaining agreement.'" Id., 261, quoting, Linglev. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-07,108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Furthermore, the United States Supreme Court has asserted that "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by 301 or other provisions of the federal labor law." Allis-Chalmers Corp.v. Lueck, supra.
It is true that "[u]nder traditional principles of New York law, a party may not recover "for tortious inducement of breach of a contract without proving that the underlying contract has been breached," and therefore that such state claim was preempted. Baylis v. Marriott Corp., 906 F.2d 874, 877
(2d Cir. 1990). However, our Supreme Court has "recognize[d] that a cause of action does exist for unlawful interference with business and that it is not essential to that cause of action that it appear that the tort has resulted in a breach of contract to the detriment of the plaintiff." Sportsmen's BoatingCorp. v. Hensley, 192 Conn. 747, 754 (1984). This language suggests that a court does not have to interpret a collective bargaining agreement before resolving a state claim of tortious interference with a contract. As a result, the state claim is not automatically preempted. See Vorvis v. Southern New EnglandTelephone Co., 821 F. Sup. 851, 855 (D. Conn. 1993) (state CT Page 9816 law claim of tortious interference with a contract does not require the court to construe the plaintiff's employment contract or collective bargaining agreement).[1] Moreover, inHensley, the Court declared that "[t]he law does not . . ., restrict its protection to rights resting upon completed contracts, but it also forbids unjustifiable interferences with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry." (Internal quotation marks omitted.) Sportsmen's Boating Corp. v.Hensley, supra. "The elements of tortious interference are the existence of a contractual or beneficial relationship, the defendant's knowledge of that relationship, the intent to interfere with it and the consequent actual loss suffered by the plaintiff." (Internal quotation marks omitted.) Beizer v.Goepfert, 28 Conn. App. 693, 701, cert. denied,224 Conn. 901 (1992), 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).[2]
In the present case, the details of the plaintiffs' collective bargaining agreement are not relevant in determining whether the defendant tortiously interfered with the making of a new collective bargaining agreement. The plaintiffs have sufficiently pleaded facts to support the elements of a tortious interference claim. Moreover, these facts, not the issue of an underlying contract breach, are crucial in surviving a motion to strike. In addition, the employer is not a defendant in this case and section 301 of the LMRA states in plain language that it concerns conflicts between employers and labor organizations representing employees. There is no indication that the defendant, who was not involved with the making of the collective bargaining agreement, acted as an agent for the plaintiffs' employer. Therefore, since the plaintiffs' collective bargaining agreement does not have to be interpreted before analyzing the tortious interference claim, the first three counts survive a motion to strike.
As to counts four, five and six, "[i]t is well settled that, in order to state a claim of intentional infliction of emotional distress, it must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Parsons v.United Technologies Corp., 243 Conn. 66, 101 (1997). In the CT Page 9817 present case, taking the facts in light most favorable to the plaintiffs, this court finds that they have sufficiently pleaded the elements for a cause of action based on intentional infliction of emotional distress.
However, "[i]n order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business." (Internal quotation marks omitted.)Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480,500-01 (1995). This "doctrine of respondeat superior focuses on the employee's conduct rather than on the employer's knowledge or approval of the acts. If the employee acted with apparent authority in furtherance of the employer business, the employer's consent or ratification of the misconduct is irrelevant . . ., even an innocent employer must compensate an injured party."Paine Webber Jackson Curtis. Inc. v. Winters,22 Conn. App. 640, 646, cert. denied, 216 Conn. 820 (1990). Finally, "it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business." (Internal quotation marks omitted.) Doe v. Hartford Roman CatholicDiocesan Corp., 45 Conn. Sup. 388, 390 (1998). As stated in the pleadings, Eno, an employee of the defendant, was trying to solicit investment business for his employer which is clearly within the scope of his employment and benefits the defendant as well. Therefore, the motion to strike counts four, five and six is denied.
The CUTPA statute provides, inter alia, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 42-110b (a) of the General Statutes. In addition, "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section42-110b, may bring an action . . ., to recover actual damages." Section 42-110g (a). Our Supreme Court has held, in applying this statute, that "[i]njury to consumers . . . is merely one criterion for determining whether a practice violates CUTPA." In fact, the Court has "stated in no uncertain terms that CUTPA imposes no requirement of a consumer relationship. " Fink v.Golenbock, 238 Conn. 183, 214-15 (1996). Instead a "competitor or other business person can maintain a CUTPA cause of action without showing consumer injury." McLaughlin Ford.CT Page 9818Inc. v. Ford Motor Co., 192 Conn. 558, 567 (1984).
However, the cases which uphold a CUTPA claim, but do not involve a consumer relationship, deal with competitors who use deceptive methods to divert clients or trade away from honest business people. See Fink v. Golenbock, supra, 212;Larsen Chelsey Realty Co. v. Larsen, supra, 497. In the present case, the plaintiffs lost their jobs and their ability to negotiate a new collective bargaining agreement allegedly due to the unscrupulous actions of the defendant's agent. This situation more closely relates to their employment status, not whether competitors were unfairly affecting their ability to earn an income. In Quimby v. Kimberly Clark Corp.,28 Conn. App. 660, 670 (1992), the Appellate Court held that "the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA." In the present case, there is no injured business person losing clients or sales to another, but employees artfully alleging wrongful termination through a CUTPA claim. As inQuimby, there is no allegation in the complaint that the defendant advertised, sold, leased or distributed any services or property to the plaintiff[s]. Therefore, counts seven, eight and nine of the plaintiffs' complaint is stricken.
Therefore, the defendant's motion to strike counts one through six of the plaintiff's complaint is denied, and the motion to strike counts seven, eight and nine is granted.
Moraghan, J.