[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
CT Page 4521
 Introduction and Factual Background
On August 25, 2000, the plaintiffs, Richard Reynolds and Reynolds, Pearson Company, LLC (RPC), filed a complaint against the defendants, Irvin Miglietta and The Allied Group, Inc.-DEL (Allied). Reynolds is a member of RPC and a licensed certified public accountant, and Miglietta was the President and largest shareholder of Allied at the time the allegations occurred. The complaint alleges the following facts.
On or about July 3, 1997, Allied and Reynolds entered into an employment agreement whereby Reynolds agreed to serve as chief financial officer of Allied. Because of the defendants' promises and incentives, Reynolds curtailed his full time accounting practice. In particular, Miglietta told Reynolds that he would receive share certificates reflecting a 20 percent ownership interest in Allied, but Reynolds never received the certificates as promised. Thereafter, Reynolds sought legal representation in an effort to obtain the promised share certificates, and, by the summer of 1999, Miglietta and Reynolds negotiated the final language of a proposed employment agreement and shareholders agreement. Miglietta terminated Reynolds, however, in September, 1999. Prior to Reynolds' termination, Miglietta jointly transferred share certificates representing 40 percent of the common stock in Allied to two employees in exchange for their agreement to oppose issuance of share certificates to Reynolds and to support Reynolds' termination.
The complaint further alleges that on or about October 19, 1999, Reynolds negotiated a severance package with Allied's representatives, and, in return, Reynolds agreed to release Allied from claims he would have against it under the employment agreement. On November 5, 1999, Allied provided Reynolds with the initial draft of the settlement agreement between Allied and Reynolds. In March, 2000, the plaintiffs maintained that certain inaction by Allied constituted a repudiation of the settlement agreement. In response, Allied denied a repudiation occurred because it maintained that no settlement agreement existed.
The plaintiffs commenced this lawsuit against the defendants alleging, against Allied, breach of the settlement agreement (count one), breach of the covenant of good faith and fair dealing implied in the settlement agreement (count two), unjust enrichment as to the settlement agreement (count three), breach of the employment agreement (count four), breach of the covenant of good faith and fair dealing CT Page 4522 implied in the employment agreement (count five), unjust enrichment as to the employment agreement (count six) and promissory estoppel as to the employment agreement (count seven). In addition, the plaintiffs allege, against both defendants, a claim for wages pursuant to General Statutes § 31-72 (count eight), intentional misrepresentation (count nine), negligent misrepresentation (count ten) and violation of CUTPA (count thirteen). The plaintiffs further allege, against Miglietta, tortious interference with contractual relations (count twelve) and personal liability (count fourteen).[1] Finally, RPC makes a claim against Allied for rent (count eleven).
The defendants have now filed a motion to strike counts seven, nine, ten and thirteen of the plaintiffs' complaint.
 DISCUSSION
"The purpose of the motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v. Autuori, 236 Conn. 820, 825, 676 A.2d 357 (1996). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulkner v. UnitedTechnologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997).
 A
The defendants first move to strike count seven alleging promissory estoppel. Specifically, the defendants argue that the plaintiffs are precluded from asserting a claim for promissory estoppel when a written employment contract exists. The plaintiffs argue in opposition that count seven is a legally sufficient claim because it is permissible to plead alternative causes of action. Because the defendants have not admitted that either the employment agreement or its terms are enforceable by the plaintiffs they argue that count seven is a legally permissible alternative claim to their contract claim pleaded in count four. See, e.g., De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., Superior Court, judicial district of Hartford at Hartford, Docket No. 580129 (July 2, 1999, Sullivan, J.) (denying motion to strike alternative claim of promissory estoppel where defendant had not yet filed answer and unclear whether defendant would contest enforceability of contract); Clock TowerCT Page 4523Mill Development v. Cambridge Development Corp., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 555348 (April 23, 1996, Lavine, J.) (same).
"A fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promissee could reasonably have expected to induce reliance." D'Ulisse-Cupo v. Board of Directors ofNotre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987). Where a "valid contract exists, the remedy of promissory estoppel, which is a theory inconsistent with the existence of a contract, is precluded,"Moukarzel v. Oxygen Electronics, LLC, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 359965 (August 12, 1999,Melville, J.); Johnson v. Bridgeport, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 321129 (June 3, 1999, Nadeau, J.) ("when valid contracts exist, recovery cannot be obtained under the doctrine of promissory estoppel"); Lark v. Post Newsweek StationsConnecticut, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 705326 (August 9, 1995, Wagner, J.) ("An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced for one reason or another.").
The plaintiffs insist upon their right to plead in the alternative, claiming that count seven "alleges that because the defendants' promises induced him to act upon them, the defendants should now be estopped from claiming that the Employment Agreement is either invalid or unenforceable." (Plaintiff's Memorandum, p. 2.) The plaintiffs subsequently claim that count seven assumes that there is no valid contract but, alternatively, that the defendants' promises to Mr. Reynolds should be enforced nonetheless." (Plaintiff's Memorandum, p. 2.)
Contrary to the plaintiffs' claims, count seven does not allege or assume what the plaintiffs represent it does. It is true that "[u]nder our pleading practice, a plaintiff is permitted to advance alternative and even inconsistent theories of liability against one or more defendants in a single complaint." Dreier v. Upjohn Co., 196 Conn. 242,245, 492 A.2d 164 (1985); see also Practice Book § 10-25. Construing the complaint in the light most favorable to the plaintiffs, however, the plaintiffs have not pleaded in the alternative as they claim. Count seven contains numerous incorporated paragraphs in which the plaintiffs specifically plead the existence and terms of an employment contract. Significantly, count seven alleges no promises other than those CT Page 4524 specifically alleged to be "set forth in the Employment Agreement." (Count seven, ¶¶ 55-58.) Moreover, there is no indication in any of the allegations contained in count seven that the alleged contract is invalid or unenforceable for any reason, and the court will not assume facts not pleaded. "A party does not have a cause of action for promissory estoppelwhere an existing contract . . . is alleged and appears to beenforceable." (Emphasis added.) Lark v. Post Newsweek StationsConnecticut, Inc., supra, Superior Court, Docket No. 705326. If the plaintiffs meant for count seven to be pleaded in the alternative, i.e. to assume the invalidity or unenforceability of the contract, they may take advantage of their opportunity pursuant to Practice Book § 10-44 to replead the count to allege such. For present purposes, however, because count seven alleges the existence of a written contract containing the alleged promises, it is not pleaded as an alternative claim of promissory estoppel. Therefore, the defendants' motion to strike count seven is granted.
 B
The defendants next move to strike counts nine and ten alleging intentional and negligent misrepresentation. Specifically, the defendants argue that, pursuant to the "economic loss doctrine," Connecticut courts bar claims for liability in tort when the loss is merely economic and does not involve physical harm or injury to property. They argue that because the plaintiffs' claims arise entirely out of the employment contract, there is no injury to person or property and that, therefore, the plaintiffs' alleged injury is purely economic, barring any claim in tort. In opposition, the plaintiffs, citing D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, supra, 202 Conn. 218, argue that the ninth and tenth counts should not be stricken because the Connecticut Supreme Court recognizes a tort cause of action for misrepresentation in the context of an employer-employee relationship. The defendants respond that the issue is not whether a misrepresentation claim may be brought in the context of an employer-employee relationship, which they do not dispute, but rather whether such a tort claim may be brought by a plaintiff claiming purely economic damages. As the defendants correctly point out, the plaintiff in D'Ulisse-Cupo v. Board of Directors of NotreDame High School, supra, 202 Conn. 206, was not claiming purely economic damages; see id., 209; thus, the defendants argue, the case is not dispositive of the issue.
"The thrust of the common law economic loss rule is that in the absence of privity of contract between the plaintiff and the defendant, or, in the absence of an injury to the plaintiffs person or property, the CT Page 4525 plaintiff may not recover in tort for a purely economic loss." AmityRegional School District #5 v. Atlas Construction Co., Superior Court, judicial district of Waterbury, Complex Litigation Docket No. 153388 (July 26, 2000, McWeeny, J.) (27 Conn. L. Rptr. 605). "The economic loss doctrine is a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic." Scap Motors, Inc. v. Pevco SystemsInternational, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 348461 (August 12, 1999, Melville, J.) (25 Conn. L. Rptr. 283). The rationale for this rule appears in PrincessCruises, Inc. v. General Electric Co., 950 F. Sup. 151,156 (E.D.Va. 1996): "Almost every breach of contract involves actions that can be conceived of as a negligent or intentional tort. If left unchecked, the incessant tide of tort law would erode and eventually swallow contract law. This Court believes that if tort law and contract law are to fulfill their distinctive purposes, they must be distinguished where it is possible to do so. The economic loss doctrine serves as a basis for such a distinction." The court further explained: "When, through the negligence of one of the parties, the subject of the transaction physically injures a person, or damages the property of someone not a party to the contract, the law of tort properly provides a cause of action. But to permit a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished virtue of contract law, the power of the parties to allocate the risks of their own transactions." Id., 155.
There is inconsistency in the decisions of Superior Court judges regarding the applicability of the economic loss doctrine in Connecticut. One line of authority holds that the economic loss doctrine has been accepted and applied by Connecticut courts. See, e.g., AmityRegional School District #5 v. Atlas Construction Co., Superior Court, judicial district of Waterbury, Complex Litigation Docket No. 153388 (August 4, 2000, McWeeny, J.) ("this court recognizes the economic loss rule, barring claims for liability in tort when, as in this case, the loss is merely economic and does not involve physical harm or injury to property"); Amity Regional School District #5 v. Atlas Construction Co., supra, 27 Conn. L. Rptr. 605 (motion to strike negligence claim granted on ground claim barred by economic loss doctrine); DeVillegas v. QualityRoofing, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 294190 (December 1, 1993, Freedman, J.) (motion to strike negligence claim granted on ground economic loss doctrine bars claim for economic damages absent allegations of privity of contract and of injury to person or property). In contrast, the other line of authority rejects the proposition that the economic loss doctrine has CT Page 4526 been adopted by the appellate courts and allows tort claims despite the fact that only economic losses are claimed. See, e.g., Carolina Casualtyv. 60 Gregory Boulevard, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 169383 (March 20, 2000, Hickey,J.) (motion to strike plaintiff contractor's claim against defendant architectural firm hired by owner for negligent provision of inaccurate plans and specifications denied on ground majority of jurisdictions hold economic loss doctrine does not bar negligence actions by construction professionals against one another where reliance by plaintiff reasonably foreseeable); Scap Motors, Inc. v. Pevco Systems International, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 348461 (August 12, 1999, Melville, J.) (25 Conn. L. Rptr. 283) (in action alleging breach of agreement settling dispute concerning sale and installation of pneumatic tube transport system, motion to strike fraud claim for economic losses denied on ground appellate courts have not recognized economic loss doctrine and court likewise would not); DarienAsphalt Paving, Inc. v. Newtown, Superior Court, judicial district of New Britain at New Britain, Docket No. 4878 (December 7, 1998, Nadeau, J.) (23 Conn. L. Rptr. 495) (motion to strike tort claims denied, declining to recognize the economic loss doctrine); Reiner Reiner, P.C. v.Connecticut Natural Gas Corp., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 551260 (December 12, 1995,Hennessey, J.) (motion to strike negligence claims denied, rejecting argument that economic loss doctrine bars action for direct economic losses resulting from defendant's negligence); Eremita v. Stein SuperiorCourt, judicial district of Hartford-New Britain at New Britain, Docket No. 463210 (November 2, 1995, Arena, J.) (judgment for plaintiff on negligent misrepresentation claim not barred by fact only economic losses claimed).
The former line of authority accepting the economic loss doctrine citesFlagg Energy Development Corp. v. General Motors Corp., 244 Conn. 126,709 A.2d 1075 (1998), and/or Connecticut Mutual Life Ins. Co. v. New York New Haven R. Co., 25 Conn. 265 (1856), as authority for the proposition that the economic loss doctrine has been adopted and applied in Connecticut. This court's own reading of these cases finds, however, that neither Flagg nor Connecticut Mutual provides support for the proposition that the economic loss doctrine has been conclusively adopted as precluding all tort claims such as those in the present case. The holding in Flagg may fairly be read as holding that where a plaintiff claims commercial losses suffered as a result of defective performance of a contract for the sale of goods, such losses are governed by the UCC, which in turn preserves common law actions for fraud and misrepresentation only as long as such actions are consistent with the CT Page 4527 particular provisions of the UCC. See Flagg Energy Development Corp. v.General Motors Corp., supra, 154-55. The Connecticut Supreme Court specifically found that one such provision, General Statutes §42a-2-721, was in fact intended "to make actions for fraud or misrepresentation presumptively inconsistent with post-acceptance claims for breach of warranty." (Emphasis omitted.) Id., 155. Therefore, the court's affirmance of the trial court's granting of the defendant's motion to strike the plaintiffs' misrepresentation claim was not expressly premised on the economic loss doctrine but rather on the fact that such a claim was incompatible with and thus displaced by the provisions of the UCC.
Connecticut Mutual involved an action by an insurance company against a railroad after the insurer became liable to pay the proceeds of a life insurance policy to the estate of its insured, who died after the train he was riding in derailed due to the negligence of the railroad.Connecticut Mutual Life Ins. Co. v. New York New Haven R. Co., supra,25 Conn. 271. The court directed judgment for the defendant, holding that "in the absence of any privity of contract between the plaintiffs and defendants, and of any direct obligation of the latter to the former growing out of the contract or relation between the insured and the defendants, the loss of the plaintiffs, although due to the acts of the railroad company . . . was a remote and indirect consequence of the misconduct of the defendants, and not actionable." Id., 276-77. The court reached this conclusion after finding neither a public law charging the railroad with a duty to insurers of its passengers nor that the insured exacted any obligation from the railroad toward his insurer when he contracted for carriage. Id., 276.
The above quoted language from Connecticut Mutual is presumably the portion of the case relied on as articulating the concepts of the economic loss doctrine. This language, however, does not articulate the economic loss doctrine, but rather illustrates an early application of the concepts of privity of contract and foreseeability, which the court utilized in holding that the injury to the insurer was too remote and indirect a consequence to hold the railroad liable therefore.
Nevertheless, even if Flagg and Connecticut Mutual do stand for the general adoption of the economic loss doctrine, the Connecticut Supreme Court has indicated that where the tort alleged is an intentional tort, the doctrine would not apply to bar the cause of action. See ConnecticutMutual Life Ins. Co. v. New York New Haven R. Co., supra, 25 Conn. 276
("Had the life of [the insured] been taken with intent to injure the CT Page 4528 plaintiffs through their contract liability, a different question would arise, inasmuch as every man owes a duty to every other not intentionally to injure him."). In addition, the Connecticut Supreme Court has expressly rejected the economic loss doctrine as a bar to a claim for negligent misrepresentation. See Williams Ford, Inc. v. Hartford CourantCo., 232 Conn. 559, 579, 657 A.2d 212 (1995). In that case, the defendant argued that the tort of negligent misrepresentation did not apply to the facts of the case on the ground that "where the controversy concerns purely economic losses allegedly caused by statements made during the course of a contractual relationship between businesses, it is contract law, rather than tort law, that should apply." Id. The court rejected this argument, relying on its prior decision of D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, supra, 202 Conn. 218, to support its conclusion that "a remedy on the contract is independent of a remedy for negligent misrepresentation." Williams Ford, Inc. v. Hartford CourantCo., supra, 579. The court's reliance on D'Ulisse-Cupo for this proposition also would seem to imply that its allowance of a negligent misrepresentation claim in D'Ulisse-Cupo was not dependent on the nature of the damages alleged by the plaintiff. See also Eremita v. Stein, supra, Superior Court, Docket No. 463210 ("a claim of negligent misrepresentation, based on statements made during the course of a contractual relationship, may be brought even though purely economic losses are alleged"). Thus, whatever the viability of the economic loss doctrine in Connecticut, the Connecticut Supreme Court has not, in at least some cases, barred claims for intentional torts or for negligent misrepresentation despite the fact purely economic damages are claimed.
Based on the foregoing, the court declines to apply the economic loss doctrine to bar the plaintiffs' claims for intentional and negligent misrepresentation. Therefore, the defendants' motion to strike counts nine and ten is denied.
 C
Finally, the defendants move to strike count thirteen alleging a violation of CUTPA. Specifically, the defendants argue that employer-employee relationships do not constitute trade or commerce within the context of CUTPA. In opposition, the plaintiffs argue that the substance of their CUTPA claim arises out of a dispute over the ownership structure of Allied and not out of anything within the narrow confines of the employer-employee relationship that existed between Reynolds and the defendants. CT Page 4529
In Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 613 A.2d 838
(1992), the Appellate Court held that "the actual employment relationship is not itself trade or commerce for the purpose of CUTPA." (Internal quotation marks omitted.) Id., 670. In reliance on Quimby v. KimberlyClark Corp., supra, 670, numerous Superior Court judges have stricken CUTPA claims when the allegations arise out of or are closely related to an employer-employee relationship. See, e.g., Jablonski v. SheldonPrecision Co., Superior Court, judicial district of Waterbury, Docket No. 145784 (April 10, 2000, Doherty, J.); Shah v. Cover-It, Inc., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 68182 (April 10, 2000, Arnold J.); Bishop v. Paine Webber, Inc., Superior Court, judicial district of Danbury, Docket No. 331709 (July 28, 1999, Moraghan, J.) (25 Conn. L. Rptr. 173, 175); D'Aquila v.Environmental Systems Products, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 455259 (November 18, 1993, Berger, J.); see also United Components, Inc. v. Wdowiak,239 Conn. 259, 264-65, 684 A.2d 693 (1996).
The plaintiffs are correct, however, in their assertion that it is not the relationship between the parties that is dispositive but the conduct of the defendants. Fink v. Golenbock, 238 Conn. 183, 214, 680 A.2d 1243
(1996); Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 491,656 A.2d 1009 (1995). This court thus focuses on the conduct of the defendants alleged to be in violation of CUTPA. The allegations show that the complained of activities of the defendants all arise out of or are related to, first, the defendants' refusal to honor the terms of Reynolds' employment contract by giving him an ownership interest in the company and, then, the defendants' subsequent refusal to honor an agreement settling the dispute over the ownership structure of the company.
The court finds that these allegations of the complaint bear little similarity to the kind of anticompetitive activity conducted outside of the employment relationship held to have violated CUTPA in Larsen ChelseyRealty Co. v. Larsen, supra, 232 Conn. 480, and Fink v. Golenbock, supra, 238 Conn. 183. As the court explained in Fink: "In Larsen ChelseyRealty Co. v. Larsen, supra, 232 Conn. 480 . . . the defendant, who was president of [the plaintiff], accepted employment with a competing firm. Id., 485. He sent notices to clients and business contacts, falsely informing them that [the plaintiff] was being taken over by the competing firm and that they should take their business to that firm. Id." Fink v. Golenbock, supra, 213. "We concluded that by falsely informing clients and business contacts that [the plaintiff] was going out of business, by CT Page 4530 taking that client base to a competitor and by taking [the plaintiffs] employees to a competitor, the defendant had engaged in unfair trade practices in violation of CUTPA." Id., 214.
Similar circumstances were present in Fink v. Golenbock, supra,238 Conn. 183. In that case, the plaintiff and the defendant had formed a corporation in which each owned 50 percent. After the relationship between the parties deteriorated, the defendant "[u]sing threats . . . forced the plaintiff first to leave the practice and then to leave town. [The defendant] informed clients that the corporation had changed and that they should take their business and pay their bills to a new corporation. [The defendant] took over the corporation's assets, equipment and employees, using them to establish his new practice, which provided the same type of services. Because the original corporation had neither been dissolved . . . nor extinguished . . . these acts amounted to competitive moves designed to co-opt all of the corporation's operations." Id., 214. The defendant characterized the action as a "dispute over the internal governance of the corporation," to which CUTPA did not apply. Id., 213. The court rejected his argument, concluding that his "actions went well beyond governance of the corporation, and placed him in direct competition with the interests of the corporation." Id.
No such allegations are made in the present case. Instead, the allegations all arise out of or are related to an alleged breach of the terms of an employment contract and the subsequent activities of the parties to resolve the dispute. It is hard to imagine anything more closely arising out of an employment relationship than the formation and terms of the employment. This court thus finds that these allegations cannot support a cause of action under CUTPA. See Quimby v. KimberlyClark Corp., supra, 28 Conn. App. 670; see also Jablonski v. SheldonPrecision Co., supra, Superior Court, Docket No. 145784 (allegations that plaintiff accepted employment with defendant in reliance on representations of terms of that employment, which included control over enforcement of quality control standards, and that plaintiff was later discharged for failing to approve poor quality goods arise out of employer-employee relationship and do not implicate CUTPA).
The plaintiffs' characterization of their claims as a dispute over the ownership structure does not save their CUTPA claim. Numerous Superior Court decisions hold that such intraorganizational disputes do not fall within the purview of CUTPA. See, e.g., Chila v. Chila, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 140570 (April 3, 1995, D'Andrea J.) (motion to strike CUTPA claim granted on ground allegation that defendants agreed to transfer ownership in CT Page 4531 corporation in return for plaintiffs continued employment concerns dispute over ownership of corporation not within purview of CUTPA); see also Sector Management, Inc. v. Taurus Advisory Group, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 154033 (April 15, 1998, D'Andrea, J.) (intraorganizational dispute concerning resource contribution in formation of company does not implicate CUTPA); Diette v. Dental Group of Norwalk, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 158747 (February 27, 1998, Lewis, J.) (allegations that defendant offered ownership interest in corporation to plaintiff involve internal workings of corporation to which CUTPA inapplicable).
For the foregoing reasons, the defendants' motion to strike count thirteen is granted.
 CONCLUSION
The defendants' motion to strike counts seven and thirteen is granted. The defendants' motion to strike counts nine and ten is denied.
Berger, J.